UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACE CAPITAL LTD., ET AL.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ePLANNING, INC. ET AL.,<br><br>　　　　Defendants. | No.  2:12-cv-01511 JAM-AC<br><br>**ORDER GRANTING PLAINTIFFS'/COUNTERDEFENDANTS' MOTION TO DISMISS COUNTERCLAIM** |

　　This matter is before the Court on Plaintiffs/Counter Defendants ACE Capital Limited, ACE Capital IV Limited, Ace Capital V Limited, and Brit UW Limited's (collectively "Underwriters") Motion to Dismiss (Doc. #100) Defendants/Counterclaimants Wood River, et al.'s (collectively "Wood River Defendants")[1] Counterclaim (Doc. #52).  Wood River Defendants oppose the motion (Doc. #106) and Underwriters replied (Doc. #107).[2]  For the following reasons, Underwriters'

---

[1] All seventy-three Counterclaimants are identified in the counterclaim (Doc. #52) and in paragraphs 294 to 366 of the Complaint (Doc. #2).
[2] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for January 23, 2013.

1

motion is granted.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Underwriters filed a Complaint in Interpleader to determine the allocation of the remaining $303,691.93 policy proceeds of the $5,000,000 claims-made-and-reported policy ("E&O Policy") issued to ePlanning Securities, Inc., and ePlanning Advisors, Inc. (collectively "ePlanning"), which includes Jeffrey A. Guidi ("Guidi") (Doc. #2). Pursuant to an assignment by Guidi, the Wood River Defendants filed a counterclaim, asserting three causes of action against Underwriters: (1) declaratory relief; (2) breach of contract; and (3) breach of covenant of good faith and fair dealing. Countercl. ¶¶ 121-138.

### A. The Underlying Actions and Assignment

Wood River Defendants filed the following four actions against ePlanning and Guidi (collectively "the Underlying Actions") for breach of their fiduciary duties and misrepresentation and/or omission of material facts to the Wood River Defendants in connection with selling tenancy-in-common interests in investments:

1. <u>Wood River Capital Resources, LLC, et al. v. CapitalSource, Inc., et al.</u>, Shasta County Case No. 168055 ("the Wood River Action");

2. <u>Santa Clara Capital Resources, LLC, et al. v. CapitalSource, Inc., et al.</u>, Shasta County Case No. 168250 ("the Santa Clara Action");

3. <u>AREI Colonnade 1, LLC, et al. v. Meecorp Capital Markets, et al.</u>, Shasta County Case No. 168466 ("the Colonnade Action");

4. <u>Spencer Capital Resources, LLC, et al. v. CapitalSource, Inc., et al.</u>, Shasta County Case No. 168637 ("the Spencer Action").

2

Countercl. ¶¶ 80, 121-138.

The Wood River Defendants settled the Underlying Actions with Guidi and ePlanning, and as part of that settlement, Guidi assigned to the Wood River Defendants all of his claims and causes of actions against Underwriters under the E&O Policy. Id. at ¶ 117.

B. The E&O Policy

Underwriters issued the E&O Policy No. 146/LDUSA0700785, to ePlanning. Id. at ¶ 87. By contract endorsement, the E&O Policy was amended to change the policy number to B0509QA106007, effective September 15, 2007. Id. The policy period of the E&O Policy was September 1, 2007, to September 1, 2008. E&O Policy, Exhibit A to Complaint (Doc. #2), at 95. The declaration page of the E&O Policy provides that the policy is a claims-made-and-reported professional liability insurance policy. Id.

Pursuant to the E&O Policy's "Additional Wordings & Clauses," "Claim" is defined as follows:

Claim means:

(a) the following made or brought by the Broker/Dealer's or the Registered Investment Advisor's customer or client in such capacity:

    (i) a written demand for monetary relief; or

    (ii) a civil or arbitration proceeding for monetary or nonmonetary relief, which is commenced by:

        1) service of a complaint or similar pleading; or

        2) receipt or filing of an arbitration demand or statement of claim; and

(b) complaints or inquiries made or brought by, on behalf of, or in the name or right of any governmental, quasi-governmental, regulatory or

```
                self-regulatory entity, whether directly or
                indirectly, in any capacity other than in its
                capacity as a customer or client of the
                Broker/Dealer or the Registered Investment
                Advisor.
```

Id. at 117.

Under the "General Conditions," in a section entitled "Notice of Claim," the E&O Policy provides the following:

```
    NOTICE OF CLAIM:

    If any Claim is first made against the Assured during
    the Policy Period, whether or not the alleged Damages
    fall within or in excess of the Deductible, the
    Assured shall give written notice to the Underwriters'
    representatives named in Item 9 of the Declarations as
    soon as possible, but in no event more than 60 days
    after the Claim is made.

    Such written notice must contain complete details of
    the Claim, the exact date the Claim was first made,
    the location, the circumstances giving rise to such
    Claim, the identity of all Claimants and a full
    description of the nature and scope of the alleged
    Damages. The Assured must immediately forward every
    demand, notice, summons or other process received by
    it or its representative, upon receipt thereof, to
    Underwriters' representatives, as per Item 9 of the
    Declarations.
```

Id. at 106.

Finally, the E&O Policy describes the "Extended Reporting Period" in pertinent part as follows:

```
    If the Underwriters cancel or refuse to renew this
    policy, the first Named Assured designated in Item 1
    of the Declarations shall have the right, in
    consideration of additional premium equal to the full
    annual Premium charged hereunder, to an extension of
    this policy, subject to its terms, conditions,
    exclusions, definitions and limitations, in respect of
    any Claim first made against an Assured and reported
    in writing to the Underwriters during the period of
    twelve (12) months after the cancellation or expiry
    date of this policy, but only if such Claim is for a
    Wrongful Act committed by an Assured in rendering or
    failing to render Professional Services subsequent to
    the Retroactive Date and prior to the cancellation
    date of this policy or the end of the Policy Period
```

```
         stated in Item 2 of the Declarations, whichever is
         earlier.
```

Id. at 107.

## II. OPINION

### A. Legal Standard

A party may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a plaintiff needs to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Dismissal is appropriate where the plaintiff fails to state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).

Upon granting a motion to dismiss for failure to state a claim, the court has discretion to allow leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could

not be saved by amendment." Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

B. Judicial Notice

Underwriters request the Court to take judicial notice of four complaints filed in Shasta County Superior Court because the contents of these documents are alleged in the counterclaim in this action. Request for Judicial Notice ("RJN"), Doc. #100, Exs. A-D. Wood River Defendants do not oppose the request.

Courts may consider extrinsic evidence when "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document." Knievel v. ESPN, 393 F.3d 1069, 1076 (9th Cir. 2005).

Accordingly, the Court GRANTS Underwriters' request for judicial notice pursuant to Federal Rule of Evidence 201.

C. Discussion

Underwriters argue that the Wood River Defendants' counterclaim should be dismissed because the underlying claims were not made during the policy period and because the Wood River Defendants fail to allege that the underlying claims were reported to Underwriters. Relying on Schwartz v. State Farm Fire & Casualty Co., 88 Cal.App.4th 1329 (2001), Wood River Defendants' argue that Underwriters had a duty not to favor the interests of one insured over another and had a further duty not to exhaust its policy limits in a manner that would leave its insured exposed to additional claims falling within the scope of coverage. Opp. at 4.

Under a claims-made-and-reported policy, such as the policy here, "an insurer provides coverage for any loss resulting from claims *made* during the policy period." World Health & Educ. Found. v. Carolina Cas. Ins. Co., 612 F. Supp. 2d 1089, 1094 n.1 (N.D. Cal. 2009) (citing Burns v. Int'l Ins. Co., 929 F.2d 1422, 1424 (9th Cir. 1991)) (emphasis in original). Therefore, timely reporting of a claim is the event triggering coverage. KPFF, Inc. v. California Union Ins. Co., 56 Cal.App.4th 963, 972 (1997). "Though the coverage of a claims-made-and-reported policy is limited, the insuring agreement is still subject to the same principles of interpretation as other insurance policies." Id. at 973.

Here, the parties agree that the Wood River Defendants as assignees stand in the insured's shoes and are subject to any defenses the insurer had against the insured. See Woolett v. Am. Employers Ins. Co., 77 Cal.App.3d 619, 625 (1978). However, they disagree on whether this case is governed by Schwartz. In Schwartz, the insurer paid out the full benefits of the policy in a manner that favored one insured to the detriment of a second insured for the same benefits, even though it knew that the plaintiffs would have competing claims on the limited funds once their primary insurance was exhausted. 88 Cal.App.4th at 1333-34. The court held that "an insurer that pays the full limits of its policy may be liable for breach of the implied covenant, if improper claims handling causes detriment to the insured." Id. at 1339. Moreover, the Schwartz court distinguished cases where no breach of contract and no breach of the covenant occurred because there was no coverage or no

insurable interest.  Id. (citing Love v. Fire Ins. Exch., 221 Cal.App.3d 1136, 1151-52 (1990) (holding that no benefits were due because the claim was time barred)).

Here, unlike in Schwartz, there is no covered or potentially covered claim.  The four underlying claims mentioned in Wood River Defendants' counterclaim were filed after the expiration of the policy and therefore could not have been timely reported.  The policy period was September 1, 2007, to September 1, 2008.  E&O Policy at 95.  The earliest underlying action was filed on December 23, 2009, more than one year after the policy expired. Wood River Action, Ex. A to RJN, at 1.  Even if the insured had purchased an Extended Reporting Period for the E&O Policy, which would extend the period for covered claims for twelve months after the policy expired, i.e. to September 1, 2009, in this case, the earliest underlying action would still fall at least two months outside the policy period.  Therefore, because there is no potential coverage, Wood River Defendants' reliance on Schwartz is misplaced.

Further, as Underwriters contend, an insurer cannot be held liable on a bad faith claim for doing what is expressly permitted in the agreement.  Solomon v. N. Am. Life & Cas. Ins. Co., 151 F.3d 1132, 1137 (9th Cir. 1998).  Here, the policy obligated Underwriters to pay prior covered claims and defense costs but were not required to pay claim expenses in excess of the policy limit.  See E&O Policy at 106.  Therefore, the payments for other covered claims and defense costs cannot support the Wood River Defendants' assigned claims for breach of contract or bad faith.

Accordingly, the Court finds the Wood River Defendants cannot allege that there is any covered or potentially covered claims and therefore, its claims must be dismissed.  Because the Court further finds that the counterclaim cannot be saved by amendment, granting Wood River Defendants leave to amend would be futile.  The Court need not address Underwriters' argument that Wood River Defendants fail to allege that the claims were reported to Underwriters.

### III. ORDER

For the reasons set forth above, Underwriters' Motion to Dismiss is GRANTED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: March 7, 2013

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE